IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION AT MEMPHIS

| | |
|---|---|
| AMERICAN COPPER & BRASS, INC., on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BOLIDEN AB; BOLIDEN FABRICATION AB; BOLIDEN CUIVRE & ZINC S.A.; HALCOR S.A.; HME NEDERLAND BV; IMI PLC; IMI KYNOCH LTD.; YORKSHIRE COPPER TUBE LTD.; KM EUROPA METAL AG; TRÉFIMÉTAUX SA; EUROPA METALLI SPA; MUELLER INDUSTRIES, INC.; WTC HOLDING COMPANY, INC.; MUELLER EUROPE LTD.; DENO HOLDING COMPANY, INC.; DENO ACQUISITION EURL; OUTOKUMPU OYJ; OUTOKUMPU COPPER PRODUCTS OY; WIELAND WERKE AG; AUSTRIA BUNTMETALL AG; and BUNTMETALL AMSTETTEN G.M.B.H.,<br><br>Defendants. | CIVIL ACTION NO.<br><br>**CLASS ACTION COMPLAINT**<br><br>**04-2771-D V**<br><br>**JURY TRIAL DEMAND** |

## COMPLAINT

Plaintiff American Copper & Brass, Inc., individually and on behalf of a Class (as defined below) of all those similarly situated direct purchasers of Copper Plumbing Tubes as defined herein, brings this action against: Boliden AB; Boliden Fabrication AB; Boliden Cuivre & Zinc S.A.; Halcor S.A.; HME Nederland BV; IMI plc; IMI Kynoch Ltd.; Yorkshire Copper Tube Ltd.; KM Europa Metal AG; Tréfimétaux SA; Europa Metalli SpA; Mueller Industries, Inc.; WTC Holding Company, Inc.; Mueller Europe Ltd.; DENO Holding Company, Inc.; DENO Acquisition EURL; Outokumpu Oyj; Outokumpu Copper Products OY; Wieland Werke AG; Austria Buntmetall AG; and Buntmetall Amstetten Ges.m.b.H (collectively, "Defendants") for

6319



damages under the antitrust laws of the United States. Plaintiff respectfully demands a trial by jury, and complains and alleges on information and belief as follows:

## JURISDICTION AND VENUE

1. The claims in this Class Action Complaint ("Complaint") are brought under Sections 4 and 16 of the Clayton Act (15 U.S.C. §§ 15 and 26) to recover treble damages and costs of suit, including reasonable attorneys' fees, against Defendants for the injuries sustained by Plaintiff and the members of the Class by reason of the violations of Section 1 of the Sherman Act (15 U.S.C. § 1) as alleged herein.

2. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and § 1337, and by Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26.

3. Venue is proper in this Judicial District pursuant to Sections 4, 12 and 16 of the Clayton Act, 15 U.S.C. §§ 15, 22 and 26, and 28 U.S.C. § 1391(b), (c), and (d).

4. Defendants maintain offices, have agents, transact business, or are found within this Judicial District. Plaintiff's claims alleged in this Complaint arise in part within this District. The interstate trade and commerce described herein is and has been carried out in part within this District. Defendants have sent products into the stream of commerce that have reached this District.

## DEFINITIONS

5. The term "Copper Plumbing Tubes" includes copper water, heating and gas tubes that go into houses and buildings. The term "Copper Plumbing Tubes" includes both plain copper plumbing tubes and plastic-coated copper plumbing tubes.

6. The term "Class Period" means the period from at least as early as June 1, 1988 to March 31, 2001.

6319

2

7.      "Person" means any individual, partnership, corporation, association, or other business or legal entity.

## PARTIES

8.      Plaintiff American Copper & Brass, Inc. is a Michigan corporation with its principal place of business located at 170 East South Street, Hillsdale, Michigan 49242. During the Class Period, Plaintiff purchased Copper Plumbing Tubes directly from one or more of the Defendants or their coconspirators, and has been injured by reasons of the antitrust violations alleged in this complaint.

9.      Defendant Boliden AB ("Boliden") is a company organized under the laws of Sweden with its principal place of business located in Stockholm, Sweden. During the Class Period, Boliden, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

10.     Defendant Boliden Fabrication AB ("Boliden Fabrication") is a company organized under the laws of Sweden with its principal place of business located in Stockholm, Sweden. During the Class Period, Boliden Fabrication, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

11.     Defendant Boliden Cuivre & Zinc S.A. ("Boliden Cuivre") is a company organized under the laws of Belgium with its principal place of business located in Liége, Belgium. During the Class Period, Boliden Cuivre, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

12.     Defendant Halcor S.A. ("Halcor") is a company organized under the laws of Greece with its principal place of business located in Athens, Greece. During the Class Period,

6319

3

Halcor, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

13. Defendant HME Nederland BV ("HME Nederland") is a company organized under the laws of Denmark with its principal place of business located at Drunen, Denmark. During the Class Period, HME Nederland, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

14. Defendant IMI plc ("IMI") is a company organized under the laws of the United Kingdom with its principal place of business located in Birmingham, United Kingdom. During the Class Period, IMI, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

15. Defendant IMI Kynoch Ltd./Kynoch Works ("IMI Kynoch") is a limited liability company organized under the laws of the United Kingdom with its principal place of business located in Birmingham, United Kingdom. During the Class Period, IMI Kynoch, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

16. Defendant Yorkshire Copper Tube Ltd. ("Yorkshire Copper Tube") is a limited liability company organized under the laws of England with its principal place of business located in Liverpool, England. During the Class Period, Yorkshire Copper Tube, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

17. Defendant KM Europa Metal AG ("KM Europa") is a company organized under the laws of Germany with its principal place of business located Osnabruck, Germany. During

6319

4

the Class Period, KM Europa, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

18. Defendant Tréfimétaux SA ("Tréfimétaux ") is a company organized under the laws of France with its principal place of business located in Sérifontaine, France. During the Class Period, Tréfimétaux, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

19. Defendant Europa Metalli SpA ("Europa Metalli") is a company organized under the laws of Italy with its principal place of business located in Florence, Italy. During the Class Period, Europa Metalli, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

20. Defendant Mueller Industries, Inc. ("Mueller") is a company organized under the laws of the United States with its principal place of business located in Memphis, Tennessee. During the Class Period, Mueller, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

21. Defendant WTC Holding Company, Inc. ("WTC") is a company organized under the laws of the United States with its principal place of business located in St. Paul, Minnesota. During the Class Period, WTC, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

22. Defendant Mueller Europe Ltd. ("Mueller Europe") is a limited liability company organized under the laws of the United Kingdom with its principal place of business located in West Midlands, United Kingdom. During the Class Period, Mueller Europe, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

23.     Defendant DENO Holding Company, Inc. ("DENO Holding") is a company organized under the laws of Tennessee with its principal place of business located in Memphis, Tennessee. During the Class Period, DENO Holding, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

24.     Defendant DENO Acquisition EURL ("DENO Acquisition") is organized under the laws of Tennessee with its principal place of business located in Memphis, Tennessee. During the Class Period, DENO Acquisition, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

25.     Defendant Outokumpu Oyj ("Outokumpu") is organized under the laws of Finland with its principal place of business located in Espoo, Finland. During the Class Period, Outokumpu, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

26.     Defendant Outokumpu Copper Products OY ("Outokumpu Copper") is organized under the laws of Finland with its principal place of business located in Espoo, Finland. During the Class Period, Outokumpu Copper, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

27.     Defendant Wieland Holding AG ("Wieland") is a company organized under the laws of Germany with its principal place of business located in Bamberg, Germany. During the Class Period, Wieland, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

28.     Defendant Austria Buntmetall AG ("Austria Buntmetall") is a company organized under the laws of Austria with its principal place of business located in Enzesfeld, Austria.

During the Class Period, Austria Buntmetall, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

29. Defendant Buntmetall Amstetten GmbH ("Buntmetall Amstetten") is a company organized under the laws of Austria with its principal place of business located in Amstetten, Austria. During the Class Period, Buntmetall Amstetten, directly or through its subsidiaries and/or affiliates, produced Copper Plumbing Tubes and sold them throughout the United States.

## CLASS ACTION ALLEGATIONS

30. Plaintiff brings this action on behalf of themselves and as a class action under the provisions of Rule 23(a) (b)(2) and (b)(3) of the Federal Rules of Civil Procedure on behalf of all members of the following Class:

> All persons (excluding governmental entities, Defendants, and their subsidiaries, affiliates and co-conspirators) who directly purchased Copper Plumbing Tubes in the United States from any of the Defendants or any subsidiary or affiliate thereof, or any co-conspirator, at any time during the period from June 1, 1988 to March 31, 2001 (the "Class").

31. Plaintiff does not know the exact size of the Class because such information is in the exclusive control of the Defendants. Nevertheless, there are thousands of Class members geographically dispersed throughout the United States. Due to the nature of the trade and commerce involved, Plaintiff believes that Class members are so numerous that joinder of all Class members in this action is impracticable.

32. Plaintiff's claims are typical of the claims of the members of the Class because Plaintiff and Class members are direct purchasers of Copper Plumbing Tubes who paid artificially inflated prices for Copper Plumbing Tubes due to Defendants' contract, conspiracy or combination alleged herein.

33.     Plaintiff will fairly and adequately protect the interests of the Class as the interests of Plaintiff are coincident, and not antagonistic to, those of the Class. In addition, Plaintiff is represented by counsel who are experienced and competent in the prosecution of complex class action and antitrust litigation.

34.     The prosecution of separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

35.     Questions of law and fact common to the members of the Class predominate over questions that may affect only individual members. Defendants have acted on grounds generally applicable to the entire Class. Among the questions of law and fact common to the Class are:

(a)     whether Defendants and their co-conspirators engaged in a contract, conspiracy or combination to raise, fix, stabilize or maintain prices of Copper Plumbing Tubes sold in the United States;

(b)     whether the alleged contract, conspiracy or combination violated Section 1 of the Sherman Act;

(c)     the duration and extent of the contract, conspiracy or combination alleged herein;

(d)     whether the Defendants and their co-conspirators took affirmative steps to conceal the contract, conspiracy or combination;

(e)     whether each of the Defendants was a participant in the contract, conspiracy or combination alleged herein;

(f)     whether the Defendants' conduct caused the prices of Copper Plumbing Tubes to be set at an artificially high and anti-competitive level;

   (g)  the effect of Defendants' contract, conspiracy or combination upon interstate commerce; and

   (h)  the appropriate measure of damages.

36. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the duplication of effort and expense that numerous individual actions would engender. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class is readily ascertainable from the Defendants' records.

## TRADE AND COMMERCE

37. Beginning at least as early as June 1, 1988, and continuing until the March 31, 2001, the exact dates unknown to Plaintiff at this time, Defendants engaged in a continuing contract, conspiracy or combination in restraint of trade in violation of the Sherman Act.

38. During the Class Period herein alleged, Defendants sold and shipped substantial quantities of Copper Plumbing Tubes in a continuous and uninterrupted flow in interstate commerce to customers located in states other than the states in which the Defendants produced Copper Plumbing Tubes.

39. The Defendants' business activities that are the subject of this Complaint were within the flow of and substantially affected interstate trade and commerce.

40.     During the Class Period herein alleged, the Defendants' conduct and their co-conspirators' conduct occurred in, affected, and foreseeably restrained the interstate commerce of the United States.

### EUROPEAN UNION ACTION

41.     In September, 2004, the European Commission ("Commission") announced the imposition of fines totaling € 222,3 million against Defendants identified in this Complaint for operating a cartel throughout most of the European Economic Area for copper water, heating and gas tubing from June 1988 through March 2001, in violation of EU Treaty Article 81 and EEA Agreement Article 53.

42.     The Commission was first informed of the illegal cartel in January 2001, when Defendant Mueller approached the Commission in application of the 1996 Leniency Notice, which enables a company to avoid a fine if it is the first to reveal the existence of a cartel.

43.     The Commission's investigation revealed that Defendants operated a well-structured, classic cartel with codenames, meetings in anonymous airport lounges and the clear objective to avoid competition through the allocation of production volumes and market shares, the setting of price targets and increases as well as other commercial terms for plain and/or plastic-coated copper plumbing tubes.

44.     Notes uncovered by the Commission taken by one of the Defendants during the first European-wide meeting held on September 29, 1989 at the "Airport Forum" in Zurich, Switzerland, stated, "The objective is to keep the prices in the high price level countries high – if possible to increase even more." According to the Commission, the participants in the "Airport Forum" agreed to meet again less than a month later in the negotiation room of the Amsterdam

airport and at their meetings, Defendants would also monitor implementation of the illegal arrangements by exchanging information on sales, orders, market shares and pricing.

45. According to the Commission's investigation, the cartel was organized at three levels, the first and oldest being the so-called Sanco club – Sanco being the brand name for a quality copper plumbing tube – initially between Defendants KM Europa and Boliden and later also including Tréfimétaux, Europa Metalli and Wieland. Defendants Outokumpu and IMI joined the cartel a year later, in September 1989, and Mueller joined in 1997, creating what became known as the "group of five" largest European producers of copper plumbing tubes.

46. Based on the gravity of the facts, the duration of the violations, the relative size of the companies and their relative degree of cooperation with the Commission's investigation, the Commission imposed the following fines:

(a) Boliden AB, Boliden Fabrication and Boliden Cuivre & Zinc S.A.: € 32,6 million;

(b) Halcor S.A.: € 9,16 million;

(c) HME Nederland BV: € 4,49 million;

(d) IMI plc, IMI Kynoch Ltd. and Yorkshire Copper Tube Ltd.: € 44.98 million;

(e) KM Europa Metal AG, Tréfimétaux SA and Europa Metalli SpA: € 67,08 million;

(f) Mueller Industries, Inc. WTC Holding Company, Inc., Mueller Europe Ltd., DENO Holding Company, Inc. and DENO Acquisition EURL: € 0;

(g) Outokumpu Oyj and Outokumpu Copper Products OY: € 36,14 million; and

6319                                    11

(h)   Wieland Werke AG, Austria Buntmetall AG and Buntmetall Amstetten Ges.m.b.H: € 27,8411 million.

47.   The Commission's fines on Outokumpu, the KM Europa group, Wieland and Halcor reflected a reduction for providing information voluntarily to the Commission, which aided the Commission in establishing the violations. The Commission's fine on Outokumpu also reflected the fact that the company had previously been found to have violated competition law in 1990 by its participation in the stainless steel cartel.

## VIOLATIONS ALLEGED

48.   Plaintiff realleges and incorporates by reference as if fully set forth herein the allegations alleged in paragraphs 1-47 of this Complaint.

49.   Beginning at least as early as June 1, 1988, and continuing until at least March 31, 2001, the exact dates being unknown to Plaintiff, Defendants and their co-conspirators engaged in a continuing agreement, understanding, and conspiracy in restraint of trade to artificially raise, fix, maintain or stabilize the price of Copper Plumbing Tubes in the United States in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1.

50.   On information and belief, in formulating and effectuating the alleged contract, conspiracy or combination, Defendants and their co-conspirators engaged in anti-competitive activities, the purpose and effect of which were to artificially raise, fix, maintain, or stabilize the price of Copper Plumbing Tubes. These activities included the following:

(a)   Defendants agreed to charge prices at specified levels and otherwise to increase and/or maintain the price of Copper Plumbing Tubes in the United States;

(b)   Defendants issued price announcements and price quotations in accordance with the agreements reached;

6319

12

(c) Defendants participated in meetings and/or conversations, including surreptitious meetings in airport lounges, to discuss the price of Copper Plumbing Tubes sold in the United States;

(d) Defendants agreed during those meetings and conversations to allocate production volumes and market shares and to set price targets and price increases and otherwise to fix, increase and/or maintain prices of Copper Plumbing Tubes sold in the United States;

(e) Defendants monitored implementation of their illegal price fixing agreements by exchanging information on sales, orders, market shares and pricing of Copper Plumbing Tubes sold in the United States; and

(f) Defendants sold Copper Plumbing Tubes in the United States at anti-competitive prices.

51. Defendants and their co-conspirators engaged in the activities described above for the purpose of effectuating the unlawful agreements described in this Complaint.

52. Defendants have participated in one or more overt acts in furtherance of the contract, conspiracy or combination alleged herein and have participated in conspiratorial activities described herein.

53. During and throughout the period of the conspiracy alleged in this Complaint, Plaintiff and members of the Class purchased Copper Plumbing Tubes from Defendants (or their subsidiaries or controlled affiliates) or their co-conspirators at inflated and supracompetitive prices.

54. Defendants' contract, conspiracy or combination constitutes an unreasonable restraint of interstate and foreign trade and commerce in violation of Section 1 of the Sherman Act.

55. As a result of Defendant' unlawful conduct, Plaintiff and the other members of the Class have been injured in their businesses and property in that they have paid more for Copper Plumbing Tubes than they would have paid in a competitive market.

56. The unlawful contract, conspiracy and/or combination has had the following effects, among others:

(a) price competition in the markets of Copper Plumbing Tubes has been artificially restrained;

(b) prices for Copper Plumbing Tubes sold by the Defendants have been raised, fixed, maintained or stabilized at artificially high and non-competitive levels; and

(c) purchasers of Copper Plumbing Tubes from the Defendants have been deprived of the benefit of free and open competition in the markets of Copper Plumbing Tubes.

57. As a direct and proximate result of the illegal contract, conspiracy or combination, Plaintiff and the members of the Class have been injured and financially damaged in their respective businesses and property in that they paid more for Copper Plumbing Tubes than they would have paid in the absence of illegal contract, conspiracy or combination. Plaintiff and members of the Class thus have suffered damages in an amount presently undetermined.

## FRAUDULENT CONCEALMENT

58. Throughout the Class Period, Defendants and their co-conspirators affirmatively and fraudulently concealed their unlawful conduct against Plaintiff and the Class.

59. Plaintiff and Class members had no knowledge of this contract, conspiracy or combination, or of any fact that might have led to the discovery of it until shortly before this litigation was commenced.

60. Defendants engaged in a successful, illegal price-fixing conspiracy that, by its nature, was inherently self-concealing.

61. Plaintiff and the Class members did not discover and could not have discovered the alleged contract, conspiracy or combination at an earlier date by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and fraudulently conceal, their contract, conspiracy or combination. The contract, conspiracy or combination as herein alleged was fraudulently concealed by Defendants by various means and methods, including, but not limited to misrepresentations to customers concerning the reason for price increases and surreptitious communications between the Defendants during meetings in airport lounges and use of codenames in order to avoid detection and to prevent the existence of written records.

62. The affirmative actions of the Defendants herein alleged were wrongfully concealed and carried out in a manner that precluded detection.

63. Defendants fraudulently concealed their contract, conspiracy or combination in other ways as well. For example, Defendants falsely represented to their customers that Copper Plumbing Tube price increases were due to increases in the cost and supply of raw materials when, in fact, these price increases were the direct result of collusive activity among Defendants as alleged herein.

64. By virtue of the fraudulent concealment by Defendants and their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims that Plaintiff and the other Class members have as a result of the unlawful contract, conspiracy or combination alleged in this Complaint.

### INJURY TO PLAINTIFFS AND CLASS MEMBERS

65.     During the period covered by this Complaint, Plaintiff and members of the Class purchased substantial quantities of Copper Plumbing Tubes from the Defendants.

66.     As a direct result of the contract, conspiracy or combination of Defendants and their co-conspirators, Plaintiff and members of the Class paid substantially more for Copper Plumbing Tubes than they would have paid in the absence of Defendants' illegal contract, conspiracy or combination.

67.     By reason of the alleged violations of the antitrust laws, Plaintiff and members of the Class have been injured in their business and property and have suffered damages in an amount presently undetermined.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays:

A.      That the Court determine that the Sherman Act claim contained herein may be maintained as a class action under Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure;

B.      That the unlawful contract, conspiracy or combination alleged herein be adjudged and decreed to be a *per se* violation of Section 1 of the Sherman Act;

C.      That Plaintiff and the Class recover damages, as provided by law, and that a joint and several judgment in favor of Plaintiff and the Class be entered against the Defendants in an amount to be trebled in accordance with the antitrust laws;

D.      That Plaintiff and members of the Class be awarded pre- and post-judgment interest and that interest be awarded at the highest level rate from and after the date of service of the initial complaint in this action;

E. That Plaintiff and members of the Class recover their costs of this suit, including reasonable attorneys' fees as provided by law;

F. That Plaintiff and members of the Class have such other, further, and different relief as the case may require and the Court may deem just and proper under the circumstances.

### JURY TRIAL DEMAND

Pursuant to Fed. R. Civ. P.38(b), Plaintiff demands a trial by jury for all issues so triable.

Dated: September 24, 2004

By: _____
Paul Kent Bramlett
**BRAMLETT LAW OFFICES**
P.O. Box 150734
Nashville, Tennessee 37215
Telephone: (615) 248-2828
Facsimile: (615) 254-4116
TN SUP CT #7387/MS SUP CT #4291

Mary Jane Edelstein Fait
**WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLP**
656 West Randolph Street
Suite 500 W
Chicago, Illinois 60661
Telephone: (312) 466-9200
Facsimile: (312) 466-9292

Richard N. LaFlamme
**LAFLAMME & MAULDIN, P.C.**
2540 Spring Arbor Road
Jackson, Michigan 49203
Telephone: (517) 784-9122
Facsimile: (517) 784-1818

*Counsel for Plaintiff*
*American Copper & Brass, Inc.*