UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

*FILED BY ___ D.C.*

*05 JUL -6 AM 9: 47*

*THOMAS M. GOULD*
*CLERK, U.S. DISTRICT COURT*
*W/D OF TN, MEMPHIS*

| | | |
|---|---|---|
| AMERICAN COPPER & BRASS, INC. <br> and THE BANKRUPT ESTATE OF SMITH <br> AND WOFFORD PLUMBING AND <br> INDUSTRIAL SUPPLY, INC., on behalf of <br> themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> DONALD BOLIDEN AB, et al., <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 04-2771-DV |

---

**ORDER GRANTING MOTION TO DISMISS OF
WTC HOLDING COMPANY, INC., AND DENO HOLDING COMPANY, INC.,
AND DENYING MOTION TO DISMISS OF DEFENDANTS'
MUELLER INDUSTRIES, INC., KME AMERICA INC., OUTOKUMPU COPPER
(U.S.A.), INC., AND WIELAND METALS, INC. (DKT. # 71)**

---

This matter is before the Court upon the motion of Defendants, Mueller Industries, Inc.

("Mueller"); WTC Holding Company, Inc. ("WTC"); DENO Holding Company, Inc. ("DENO");

KME America Inc. ("KME"); Outokumpu Copper (U.S.A.), Inc. ("Outokumpu"); and Wieland

Metals, Inc. ("Wieland"), (collectively "moving Defendants" or "Defendants") to dismiss in its

entirety the class action complaint of American Copper & Brass, Inc. ("American Copper") and The

Bankrupt Estate of Smith and Wofford Plumbing and Industrial Supply, Inc. ("Smith Estate"),

(collectively "Plaintiffs"). The moving Defendants' motion was brought pursuant to Fed.R.Civ. P.

12(b)(6) as to Plaintiffs' section 1 Sherman Act claim, and pursuant to Rules 12(b)(6) and 9(b) as

to Plaintiffs' fraudulent concealment claim. For the following reasons, the Court **DENIES** the

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _7-11-05_



motion to dismiss as to moving Defendants Mueller, KME, Outokumpu, and Wieland, and **GRANTS** the motion to dismiss as to moving Defendants WTC and DENO.

## I. BACKGROUND

### A. Procedural Background[1]

On September 24, 2004, American Copper invoked this Court's jurisdiction pursuant to the provisions of sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover treble damages for, and obtain injunctive relief from, Defendants' alleged violations of section 1 of the Sherman Act, 15 U.S.C. § 1, and the cost of this suit, including reasonable attorneys fees. On March 9, 2005, Plaintiffs[2] filed a Consolidated Amended Class Action Complaint[3] (hereinafter, "complaint") with this Court. On May 6, 2005, the moving Defendants sought dismissal of Plaintiffs' complaint in its entirety.

### B. Factual Background

American Copper is a Michigan corporation. Compl. ¶ 8. The Smith Estate is an entity in the State of Tennessee. Id. at ¶ 9. The moving Defendants hail from various jurisdictions across the United States ("U.S."). Mueller, the leading producer of copper tubing in the world, is a corporation with its principal place of business in Memphis, Tennessee. WTC is a corporation with its principal place of business in Michigan. DENO is a corporation with its principal place of business in Michigan. KME is a Delaware corporation with its principal place of business in Illinois. Outokumpu is a corporation with its principal place of business in Illinois. Wieland is a corporation

---

[1] The Court received a letter from Plaintiffs' counsel dated June 30, 2005. The Court did not consider this letter in deciding this motion because the communication did not constitute a proper pleading.

[2] The Smith Estate was Plaintiff in Civil Action No. 04-2930-DV prior to consolidation.

[3] Individually and on behalf of a class pursuant to Fed.R.Civ. P. 23(a),(b)(2)-(3).

with its principal place of business in Illinois.

There are twenty-three (23) defendants in this case. Of the six moving Defendants, Mueller, KME, Outokumpu and Wieland have affiliations, either as a subsidiary or a parent entity, to at least one of the non-moving EU-based Defendants: Mueller (Mueller Europe Ltd., United Kingdom), KME (KM Europa Metal AG, Germany), Outokumpu (Outokumpu OYJ and Outokumpu Copper Products of OY, Finland), and Wieland (Wieland Werke AG, Germany).

Plaintiffs allege that between June 1, 1988, and March 31, 2001, ("Class Period"), the moving Defendants, directly or through their subsidiaries and/or affiliates, produced Copper Plumbing Tubes (hereinafter, "copper tubing") and sold them throughout the United States. Compl. ¶¶ 22, 24, 25, 28, 30, and 43. Copper tubing includes both plain copper plumbing tubes and plastic-coated copper tubal fixtures used in dwelling structures to transfer water, heat, and gas. Id. at ¶ 5. Copper tubing is used in residential and office buildings and throughout the transportation industry. Id. at ¶¶ 47-48.

Plaintiffs rely to a great extent on a September 3, 2004 European Commission ("EC") press release for its facts. This press release detailed the EC's imposition of fines against named European copper tubing manufacturers, some of whom are moving Defendants. Id. at ¶ 53. EC fines were levied against Boliden Group (Sweden), Halcor S.A. (Greece), HME Nederland BV (The Netherlands), the IMI Group (United Kingdom), the KME Group (Germany, Italy, and France), Mueller Industries, Inc. (U.S., United Kingdom, and France), Outokumpu Industries, Inc., (Finland), and Wieland Werke AG (Germany). The EC investigation led to uncovering the operation of a European cartel to fix prices of copper tubing between June, 1988, and March, 2001 "throughout most of the European Economic Area . . . in violation of EU Treaty 81 and EEA Agreement Article 53." Id.

Plaintiffs aver that on September 29, 1989, European manufacturers, some of whom are also named Defendants, met in Zurich, Switzerland (dubbed the "Airport Forum") and made statements expressing an intent to keep the price of copper tubing high in "high price level countries." Id. at ¶ 56. Plaintiffs assert that a cartel grew into "a 'group of five'[of the] largest European producers of copper plumbing tubes" with the intent to fix prices in the global copper tubing market. Id. at ¶ 57.

## II. LEGAL STANDARD

A 12(b)(6) motion tests whether a plaintiff has plead a cognizable claim. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). Essentially, it allows the court to dismiss meritless cases and claims which would otherwise waste judicial resources and result in unnecessary discovery. See, e.g., Nietzke v. Williams, 490 U.S. 319, 326-27 (1989). A court, however, is to presume that well plead allegations are true, resolve all doubts and inferences in favor of the pleader, and view the pleading in the light most favorable to the non-moving party. Re/Max Int'l, Inc. v. Smythe, Cramer, Co., 265 F.Supp. 2d 882, 886 (6th Cir. 2003).

"A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Nietzke, 490 U.S. at 326-27; Lewis v. ACB Bus. Serv., Inc., 135 F.3d 389, 405 (6th Cir. 1997). The standard to be applied when evaluating a motion to dismiss for failure to state a claim is very liberal in favor of the party opposing the motion. Westlake v. Lucas, 537 F.2d 857, 858 (6th Cir. 1976). Even if the plaintiff's chances of success are remote or unlikely, a motion to dismiss should be denied.

Before deciding to grant a motion to dismiss, the court must first examine the complaint. The complaint must contain "a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed.R.Civ. P. 8(a). The complaint must provide the defendant with "fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley, 355 U.S. at 47; Westlake, 537 F.2d at 858. The plaintiff must allege the essential material facts of the case. Scheid, 859 F.2d at 436-37. Where there are conflicting interpretations of the facts, they must be construed in the plaintiff's favor. Sinay v. Lamson & Sessions Co., 948 F.2d 1037, 1039-40 (6th Cir. 1991). However, in considering a 12(b)(6) motion, the court must not accept plaintiff's legal conclusions or unwarranted factual inferences as true. Lewis,135 F.3d at 405-06.

## III. ANALYSIS

To state a § 1 Sherman Act claim in a private antitrust action, a plaintiff must aver three essential elements: (1) the existence of a conspiracy (2) affecting interstate commerce (3) that imposes an unreasonable restraint on trade. Richter Concrete Corp. v. Hilltop Concrete Corp., 691 F.2d 818, 827 (6th Cir. 1982); Davis-Watkins Co. v. Service Merchandise, 686 F.2d 1190, 1195-96 (6th Cir. 1982).

The basic objective of the Sherman Act is to prevent or suppress devices or practices that create monopolies or restrain trade or commerce in the United States. See United States v. American Linseed Oil Co., 262 U.S. 371, 388 (1923); Sugar Institute, Inc. v. United States, 297 U.S. 553, 597 (1936). "The Sherman Act was conceived as a weapon against monopolies, trusts, and conspiracies that use[] agreement instead of financial consolidation to achieve the same results." Northwest Power Products, Inc. v. Omark Industries, Inc., 576 F.2d 83, 89 (5th Cir. 1978), rehearing denied, 579 F.2d 643, cert. denied, 439 U.S. 1116 (1979). Although the Sherman Act, by its terms, prohibits every agreement "in restraint of trade," Congress' intent was to outlaw only unreasonable restraints. See 15 U.S.C. § 1; see, e.g., State Oil Co. v. Khan, 522 U.S. 3, 10 (1997).

Two major threads of antitrust judicial analysis are employed to determine whether there has

5

been a violation of the Sherman Act: (1) *per se* unreasonable restraint on trade, derived from judicial experience with certain forms of egregious, anti-competitive restraints, and (2) "rule of reason," which entails a closer scrutiny of a plaintiff's allegations against the antitrust statute and its case law. Congress "expected the courts to give shape to the statute's broad mandate by drawing on common-law tradition." Nat'l Soc'y of Prof. Engineers v. United States, 435 U.S. 679, 688 (1978).

Judicial antitrust common law has established price-fixing as one of the *per se* unreasonable restraints on trade. See United States v. Nat'l Ass'n of Real Estate Boards, 339 U.S. 485, 489 (1950) ("An agreement, shown either by adherence to a price schedule or by proof of consensual action fixing the uniform or minimum price, is itself illegal under the Sherman Act, no matter what end it was designed to serve. That is the teaching of an unbroken line of decisions"). Where a *per se* unreasonable restraint on trade is not shown, a court's analysis must be based on an application of the rule of reason. This involves the initial showing of a relevant product and geographic market, as well as an injury to competition.

For purposes of a 12(b)(6) motion, it is not a court's function to rule on the weight of the evidence or the issue of credibility, Anderson v. Liberty Lobby, 477 U.S. 242, 249 (1986); however, failure of a plaintiff to aver either of the essential statutory elements justifies dismissal of an antitrust claim. Furthermore, while the pleading standard under the federal rules is very liberal, see Fed.R.Civ.P.8, the essential elements of a private antitrust claim must be alleged in more than vague and conclusory terms to prevent a 12(b)(6) dismissal. See Crane & Shovel Sales Corp. v. Bucyrus-Erie Co., 854 F.2d 802, 805 (6th Cir. 1988).

**1. Conspiracy**

A claim under Section 1 of the Sherman Act requires that a plaintiff "establish that the defendants combined or conspired with an intent to unreasonably restrain trade." Smith v. Northern

Mich. Hosps., 703 F.2d 942, 949 (6th Cir. 1983). The moving Defendants argue that Plaintiffs' allegations of an illegal agreement are vague and conclusory and do not sufficiently allege a conspiracy under Section 1 of the Sherman Act. The moving Defendants cite this Court's opinion in Cupp v. Alberto-Culver USA, Inc., 310 F. Supp. 2d 963 (W.D. Tenn. 2004), for the proposition that vague and conclusory statements of collusive activity are insufficient to survive a Rule 12(b)(6) motion. Cupp v. Alberto-Culver USA, Inc., 310 F. Supp. 2d at 972 (citing Crane & Shovel Sales Corp. v. Bucyrus-Erie Co., 854 F.2d at 805). The moving Defendants' reliance on Cupp for this proposition is appropriate. The moving Defendants assert that the alleged conspiracy must detail the time, place, and alleged effect of the conspiracy. Estate Constr. Co. v. Miller & Smith Holding Co., 14 F.3d 213, 221-22 (4th Cir. 1994) (the Fourth Circuit dismissed an antitrust claim that "merely reiterated mechanically the words of the Sherman Act"). Indeed, while the pleading standard under the federal rules is very liberal, see Fed.R.Civ. P. 8, "the price of entry, even to discovery, is for the plaintiff to allege a factual predicate concrete enough to warrant further proceedings, which may be costly and burdensome." DM Research, Inc. v. College of Am. Pathologists, 170 F.3d 53, 55 (1st Cir. 1999).

Estate Constr. Co. can be distinguished from the case at bar. Plaintiffs in Estate Constr. Co. merely reiterated statutory language without including any factual allegations. Plaintiffs at bar, though relying exclusively on the information and belief of facts from the EC investigation for the existence of dates, meetings, and statements, have asserted facts that point to the concerted conspiratorial acts of some of the Defendants. For purposes of this motion, all of these facts are assumed true. The moving Defendants further assert that no factual link is alleged to connect U.S. copper tubing manufacturers with the conspiratorial acts that occurred in Europe. This is true as to the moving Defendants WTC and DENO, but not as to the remaining four moving Defendants.

7

WTC and DENO are business entities organized solely under U.S. laws and Plaintiffs have averred no link between these entities and the activities that occurred within the EU. On the other hand, Mueller, KME, Outokumpu, and Wieland all have affiliated business entities in Europe who were identified parties to the alleged conspiracy and subject to EC anticompetitive sanctions. It is not inconceivable that knowledge of and participation in the conspiratorial acts existed among the U.S. and EU affiliated business entities and that such acts extended to the U.S. market. Though the holding of a foreign tribunal alone does not establish that antitrust activities have occurred under U.S. antitrust laws, the acts alleged are sufficient to state the conspiracy element for purposes of Section 1 of the Sherman Act against Mueller, KME, Outokumpu, and Wieland. As to Mueller, both its U.S. and EU business entities were specifically named in the EC press release that reported the copper tubing cartel. Accordingly, the Court finds that, as to Mueller, KME, Outokumpu, and Wieland, a conspiracy has been alleged for purposes of a violation of the Sherman Act. Accordingly, the motion to dismiss as to these Defendants is not well founded as to this element.

**2. Interstate Commerce**

The second element of a § 1 Sherman Act claim is the interstate commerce requirement, which is often referred to as jurisdictional. The Supreme Court has held that there is no practical distinction between the "jurisdictional" interstate commerce inquiry and whether a complaint pleads an effect on interstate commerce sufficient to state a claim for relief under the Sherman Act. Hosp. Bldg. Co. v. Trs. of Rex Hosp., 425 U.S. 738, 742 & n. 1 (1976) ("an analysis of challenges to antitrust claims based on the interstate commerce element under either Federal Rule of Civil Procedure 12(b)(1) or 12(b)(6) leads to the same result."). Further, the Supreme Court has held that the Sherman Act's reach is as broad as Congress' power under the Commerce Clause. McLain v. Real Estate Bd. of New Orleans, 444 U.S. 232, 241-42 (1980).

8

To establish that interstate commerce has been impacted, a plaintiff must demonstrate either (1) that the proscribed activities are actually "in" or part of interstate commerce, Mandeville Island Farms v. American Crystal Sugar Co., 334 U.S. 219 (1948), or (2) that the defendant's business activities in general substantially affect interstate commerce. McLain, 444 U.S. at 239.

Plaintiffs assert that the conspiracy to fix prices in the copper tubing industry was carried out with the intent to reach global markets. Additionally, Plaintiffs contend that the price of copper tubing in the U.S. during the Class Period, due to the conspiracy, resulted in the members of the Class paying substantially more for copper tubing than they would have paid in the absence of Defendants' conspiracy. Mueller alone is the leading global manufacturer of copper tubing. KME, Outokumpu, and Wieland also transact business globally and throughout the U.S.. The Court finds that for purposes of the 12(b)(6) motion to dismiss, Plaintiffs have satisfied the second element of their antitrust claim.

### 3. Restraint on Trade

*Per se* violations involve "agreements whose nature and necessary effect are so plainly anti-competitive that no elaborate study of the industry is needed to establish their illegality." Nat'l Soc'y of Prof'l Eng'rs v. United States, 435 U.S. 679, 692 (1978). The strict *per se* rules of modern antitrust law establish a conclusive presumption that a particular kind of action has improper anti-competitive effects, and this presumption governs regardless of whether the particular conduct in its actual context has been proved to have those consequences. State Oil Co., 522 U.S. at 10 (1997), overruling Albrecht v. Herald Co., 390 U.S. 145 (1968).

Here, Plaintiffs contends that EU-based business entities conspired to fix copper tubing prices, not just within the EU, but also in the U.S. This, Plaintiffs assert, constitutes a *per se* violation against the moving Defendants. The Court agrees. Price fixing is *per se* anticompetitive

9

and does not require a rule of reason analysis to determine whether restraint on trade has been adequately averred by a showing of the relevant product and geographic markets or injury to competition.  For purposes of this motion, Mueller, KME, Outokumpu, and Wieland's alleged participation in a horizontal restraint on trade by conspiring to fix prices in the copper tubing industry constitutes a *per se* restraint on trade for purposes of a 12(b)(6) motion to dismiss.  Because there is nothing to link WTC and DENO to the concerted acts that occurred in Europe, a claim of *per se* restraint has not been sufficiently averred against them.  Accordingly, the Court finds that Plaintiffs have adequately alleged facts of a *per se* restraint on trade against Mueller, KME, Outokumpu, and Wieland for purposes of surviving a motion to dismiss.

**4. Statute of Limitations**

The moving Defendants argue that Plaintiffs' complaint for damages for acts that occurred more than four years from the time the Sherman Act claim accrued is defeated by the statute of limitations.  The Sherman Act's limitation of action establishes that:

> [a]ny action to enforce any cause of action under Section 15, 15a, or 15c of this title shall be forever barred unless commenced within four years after the cause of action accrued.  No cause of action barred under existing law on the effective date of this Act shall be revived by this Act.

15 U.S.C. § 15b.

A Sherman Act claim accrues when the defendant commits an act that injures the plaintiffs' business. Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 338 (1971) ("each time a plaintiff is injured by an act of the defendant a cause of action accrues to him to recover the damages caused by that act and, as to those damages, the statute of limitations runs from the commission of the act").  Plaintiffs allege that the moving Defendants' violation of the Sherman Act began "at least as early as June 1, 1988, and continu[ed] until no earlier than March 31, 2001." Compl. ¶ 61.

10

Defendants assert that, to the extent Plaintiffs seek to recover damages for injuries that occurred more than four years preceding the commencement of this action (i.e., September 24, 2000), Plaintiffs' claim is time-barred and should be dismissed. Plaintiffs argue that the statute of limitations is tolled by Defendants' acts of fraudulent concealment. To establish fraudulent concealment, a plaintiff must allege:

> (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts.

Dayco Corp. v. Goodyear Tire & Rubber Co., 523 F.2d 389, 394 (6th Cir. 1975).

Additionally, Fed.R.Civ. P. 9(b) requires that a party alleging fraudulent concealment "plead the circumstances giving rise to it with particularity." Dayco Corp., 523 F.2d at 394; see also, Campbell v. Upjohn Co., 676 F.2d 1122, 1126 (6th Cir. 1982). Plaintiffs in the case at bar allege that the conspiracy "was inherently self-concealing." Compl. ¶71. See Dry Cleaning & Laundry Inst. of Detroit, Inc. v. Flom's Corp., 841 F. Supp. 212, 217 (E.D. Mich. 1993) (citing Pinney Dock and rejecting the contention that because the price-fixing conspiracy was inherently "self-concealing," plaintiffs do not need *to prove* affirmative acts of concealment") (emphasis added).

In Dayco Corp., the Sixth Circuit held that affirmative acts of concealment by the defendant beyond the original fraud do not relieve the plaintiff of the requirement of due diligence. Dayco Corp., 523 F.2d at 394. The Supreme Court in Wood v. Carpenter, 101 U.S. (11 Otto) 135 (1879), stated that "concealment by mere silence is not enough." Wood, 101 U.S. (11 Otto) at 143 (the circumstances of the discovery must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence). Id.

For purposes of this motion, the Court finds that Plaintiffs have averred affirmative acts and

11

shown diligence. Plaintiffs have averred that the means by which they discovered the alleged conspiracy was the EC press release of September 3, 2004, which sets forth the concerted conspiratorial acts. On September 24, 2004, Plaintiffs filed their original complaint in this matter. Plaintiffs argues that at this stage, it is not appropriate to determine whether their diligence was sufficient. The Court agrees. Whether their diligence was reasonably sufficient will be measured at the evidentiary stage.

Furthermore, in spite of the fact that the only known concerted acts of conspiracy occurred in Europe, the Court finds that Plaintiffs' averment sufficiently meets the particularity requirement of Fed.R.Civ. P. 9(b) for fraudulent concealment when it avers that the first European-wide meeting was held on September 29, 1989 at the "Airport Forum" in Zurich, Switzerland. According to the complaint, at this meeting Defendants agreed to meet again less than a month later in the negotiation room of the Amsterdam airport to continue their plan to fix prices. Accordingly, Plaintiffs should be allowed to proceed as to all claims against Mueller, KME, Outokumpu, and Wieland since, for purposes of a 12(b)(6) motion, Plaintiffs have alleged wrongful concealment and Plaintiffs could not have discovered the concealment. Furthermore, Plaintiffs' discovery of the EC press release goes to their diligence in discovering the alleged conspiracy. For the reasons stated above, Defendants' motion to dismiss based on the statute of limitations is **DENIED**.

12

## IV. CONCLUSION

Accordingly, the Court **DENIES** the motion to dismiss as to moving Defendants Mueller,

KME, Outokumpu, and Wieland, and **GRANTS** the motion to dismiss against moving Defendants

WTC and DENO.

IT IS SO ORDERED on this _____6ᵗʰ_____ day of July~~July~~, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

# UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 125 in case 2:04-CV-02771 was distributed by fax, mail, or direct printing on July 11, 2005 to the parties listed.

---

J. Brook Lathram
BURCH PORTER & JOHNSON
130 N. Court Avenue
Memphis, TN 38103

Moses Silverman
PAUL WEISS RIFKIND WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019

Richard N. LaFlamme
LAFLAMME & MAULDIN, P.C.
2540 Spring Arbor Road
Jackson, MI 49203

Sameer Nitanand Advani
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave
New York, NY 10019

James R. Newsom
HARRIS SHELTON HANOVER WALSH, PLLC.
One Commerce Square
Ste. 2700
Memphis, TN 38103--255

Kevin M. Kearney
HODGSON RUSS LLP
One M & T Plaza
Ste 2000
Buffalo, NY 14203

Mary Jane Fait
WOLF HALDENSTEIN ADLER FREEMAN & HERZ LLC- Chicago
55 W. Monroe St.
Ste. 1111
Chicago, IL 60603

David R. Esquivel
BASS BERRY & SIMS PLC
315 Deaderick Street
Ste. 2700
Nashville, TN 37238--000

B. J. Wade
GLASSMAN EDWARDS WADE & WYATT, P.C.
26 N. Second Street
Memphis, TN 38103

Seema Tendolkar
PAUL WEISS RIFKIND WHARTON & GARRISON
1285 Avenue of Americas
New York, NY 10019

Robert L. Crawford
WYATT TARRANT & COMBS
P.O. Box 775000
Memphis, TN 38177--500

Ranelle A. Leier
OPPENHEIMER WOLFF & DONNELLY
3300 Plaza VII Bldg
45 S. Seventh St.
Minneapolis, MN 55402--160

Alexandra H. Russello
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave.
New York, NY 10019

John I. Houseal
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Scott S. Rose
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave
New York, NY 10019

William H. Rooney
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave.
New York, NY 10019

William M. Audet
ALEXANDER HAWES & AUDET LLP
152 North Third Street
Ste. 600
San Jose, CA 95112

Colin J. Carnahan
BOULT CUMMINGS CONNERS & BERRY
414 Union St.
Ste. 1600
Nashville, TN 37219

Paul Kent Bramlett
BRAMLETT LAW OFFICES
P.O. Box 150734
Nashville, TN 37215--073

Mark S. Olson
OPPENHEIMER WOLFF & DONNELLY
3400 Plaza VII
45 S. Seventh St.
Minneapolis, MN 55402--160

Aidan Synnott
PAUL WEISS RIFKIND WHARTON & GARRISON
1285 Avenue of the Americas
New York, NY 10019

Paul A. Alexis
BOULT CUMMINGS CONNERS & BERRY
414 Union St.
Ste. 1600
Nashville, TN 37219

Kelly M. Hnatt
WILLKIE FARR & GALLAGHER LLP
787 Seventh Ave.
New York, NY 10019

Jerome A. Broadhurst
ARMSTRONG ALLEN, PLLC
80 Monroe Avenue
Ste. 700
Memphis, TN 38103--246

Daniel C. Oliverio
HODGSON RUSS, LLP
One M & T Plaza
Ste 2000
Buffalo, NY 14203

Honorable Bernice Donald
US DISTRICT COURT